UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUG CLAUSEN AND JOANIE
CLAUSEN AS TRUSTEES ON BEHALF
OF THE CLAUSEN TRUST, JOANIE S.
CLAUSEN REVOCABLE TRUST U/A
DATED APRIL 29, 2003, and as ASSIGNEE
OF ASSUREDPARTNERS OF FLORIDA,
LLC d/b/a DAWSON OF FLORIDA,   Case No. 20-11193
                                Hon. Denise Page Hood
    Plaintiffs,
v.

BURNS AND WILCOX, LTD and
US-REPORTS, INC d/b/a AFFIRM SOLUTIONS,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT
US-REPORTS, INC.'S MOTION TO DISMISS [#7]**

**I.   INTRODUCTION**

On August 22, 2019, Plaintiffs filed in the Middle District of Florida an eight (8) count Complaint against Burns and Wilcox ("B&W") and US-Reports, Inc. ("US-Reports") (collectively "Defendants"). The lawsuit stems from Defendants' alleged negligence in valuing and insuring Plaintiffs' residential property located in the State of Florida. The case was transferred to the Eastern District of Michigan on May 13, 2020. On June 3, 2020, US-Reports filed a Motion to Dismiss the two counts

Plaintiffs have alleged against US-Reports (Counts IV and VIII). [ECF No. 7] The Motion to Dismiss has been fully briefed. For the reasons that follow, the Court grants US-Reports' Motion to Dismiss Counts IV and VIII.

**II.    BACKGROUND**

Plaintiffs' cause of action consists of a series of direct claims and assigned claims discovered during a lawsuit between Plaintiffs Doug Clausen and Joanie Clausen, as Trustees on Behalf of The Clausen Trust, Joanie S. Clausen Revocable Trust U/A Dated April 29, 2003 ("Plaintiffs"), and Assured Partners of Florida, LLC d/b/a Dawson Of Florida ("Assured"). B&W served as the broker on behalf of Assured and the Clausen Trust for an insurance policy ("Policy") issued by Lexington Insurance Company to the Clausen Trust to insure the property located at 10279 Gulf Shore Drive, Naples, Florida 34108 ("Property"). ECF No. 1, ¶ 12. The Policy provided certain property insurance for the Property for the period of April 15, 2014 to April 15, 2015, with limits of $2,926,645.00 for the dwelling, $1,400,000.00 for contents, and $0.00 for use.

Assured relied on B&W to advise Assured and the Clausen Trust as to the appropriate amount of insurance coverage for the Property and the contents/personal property contained therein. The Clausens' broker, Assured, depended on B&W's experience and expertise to advise them as to the appropriate amount of insurance

coverage in the event of a loss. A contract drafted by B&W, called the "Producer Agreement," defined the relationship between Assured and B&W. The Producer Agreement was dated February 13, 2014, and it provided for B&W's indemnification of Assured for any claims, suits, losses, expenses, or damages resulting from negligence of B&W. ECF No. 1, Ex. B at § 10 (B&W will "indemnify and hold [Assured] harmless from and against any and all claims, suits, actions, judgments, loss or expense [Assured] may incur or become obligated to pay as a result of any act, omission or negligence of Burns and Wilcox in its processing or handling of insurance business… under this Agreement."). The Producer Agreement states that it "shall be subject to and governed by the laws of the State of Michigan. *Id.* at § 13. The Producer Agreement contained a forum selection clause that limits venue for any lawsuit pursuant to the Producer Agreement to "Oakland County, Michigan Crcuit Court or United States District Court for the Eastern District of Michigan, Southern Division." *Id.*

B&W hired US-Reports to conduct an inspection of the Clausen Trust Property. ECF No. 1, ¶ 19. US-Reports allegedly failed to adequately inspect and value the Property during the preparation of its report for B&W. *Id.* at ¶ 20. Based on the inspection received from US-Reports, and without conducting its own investigation, B&W issued a recommendation to Assured to reduce the amount of insurance

3

coverage provided to the Clausen Trust for the Property. That recommendation was made even though B&W knew the Property was undergoing a multi-million dollar renovation and had over $3,000,000 in improvements above its original value. *Id*. at ¶¶ 19, 23.

In March 2014, the Clausen Trust contracted with a roofing company to design and construct a waterproof roofing system for the second and third floors of the Property. In April 2014, the roofing company negligently and carelessly left a section of the roof of the Property open and when a rainstorm occurred, a significant amount rain entered and permeated the interior of the Property's south side, which then caused mold to develop throughout the Property. There was extensive damage to the Property itself as well as the contents owned therein.

On or about May 6, 2014, the roofing company negligently caused a large section of the Property's roof to catch fire through the improper use/application of a torch-applied self-adhesive material to repair extensive roof damage in and around the area of one of the Property's chimneys. The fire damaged a large portion of the Property and its roof and resulted in significant structural damage, as well as extensive petroleum smoke and soot damage and additional water damage from extinguishing the fire, to both the Property and its contents. Nearly the entire structure comprising the Property had to be "gutted" and restored in order to remediate the smoke, soot,

water, and mold damage, and almost all of the contents of the Property also had to be replaced. As a result of those events, the cost of repairs and remedying other losses exceeded $8,000,000.00.

Plaintiffs sued Assured for underinsuring the Property. *Id*. at ¶ 38. Plaintiffs alleged that the Property was significantly underinsured, resulting in a coverage gap of several million dollars between the amount insured and the amount of money required to restore the Property to its pre-fire condition, a project that was not completed until 2017. *Id*. at ¶ 30. During the underlying action against Assured, Plaintiff came to believe that, but for the acts and omissions of B&W and US-Reports in valuing and recommending placement of insurance to Assured and the Clausen Trust, the Clausen Trust would have avoided millions of dollars in uninsured losses. *Id*. at ¶ 31.

Plaintiffs' lawsuit against Assured resulted in a confidential settlement. As part of the settlement, Assured assigned to Plaintiffs all rights of Assured, including indemnification, defense, subrogation, and contribution arising from the negligence of B&W and US-Reports in the preparation of estimates concerning the value of the Property. *Id*. at Ex. A. In the instant action, Plaintiffs assert both direct and assigned claims against B&W and US-Reports. Plaintiffs' complaint alleges six counts against B&W: (1) Count I - Breach of Contractual Indemnity; (2) Count II - Common Law

Indemnity; (3) Count III - Negligence; (4) Count V - Breach of Contract; (5) Count VI - Breach of Fiduciary Duty; and (6) Count VII - Negligent Misrepresentation. Plaintiff's complaint alleges two counts against US-Reports: (a) Count IV - Negligence; and (b) Count VIII - Negligent Misrepresentation.

Shortly after this case was filed in the Middle District of Florida, B&W filed a motion to dismiss the claims against it, which included a request for transfer of the case to the Eastern District of Michigan. US-Reports filed a separate motion to dismiss. On May 12, 2020, the court in the Middle District of Florida granted B&W's request for transfer based on the forum selection clause, denied without prejudice the remainder of B&W's motion without prejudice, and denied without prejudice US-Reports' motion to dismiss. Specifically, the Middle District of Florida determined that the forum selection clause dictated the transfer of Counts I, II, V, VI, and VII (against B&W) to this Court. That court also concluded that Counts III (against B&W) and IV and VIII (both against US-Reports) should be transferred to this Court as well, rather than be severed. Following transfer of Plaintiffs' cause of action to this Court, US-Reports filed its Motion to Dismiss Counts IV and VIII.

### III. APPLICABLE LAW & ANALYSIS

#### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's

complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.  Analysis**

To establish a prima facie case of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Jackson v. Oliver*, 204 Mich.App. 122, 125 (1994). As for a negligent misrepresentation claim, a plaintiff is required "to prove that a party justifiably relied to his detriment on information

prepared without reasonable care by one who owed the relying party a duty of care." *Unibar Maintenance Servs., Inc. v. Saigh*, 283 Mich. App. 609, 621 (2009). Both causes of action require a plaintiff to establish that the defendant owed a duty to the plaintiff, and negligent misrepresentation claims also require a showing of justifiable reliance. "Duty may be defined as an obligation, to which the law will give recognition and effect [t]o conform to a particular standard of conduct toward another." *Jackson*, 204 Mich.App. at 125. Questions of duty are generally for the court to decide. *Id*.

US-Reports argues that dismissal of Counts IV and VIII is warranted because it owed no duty to Plaintiffs when it prepared its report[1] for B&W. *Fechik v. Delta Land Surveying and Engineering, Inc.*, 2002 WL 1747881 (Mich. App. July 26, 2002). US-Reports relies on the following language contained in the report it prepared for B&W:

> CONFIDENTIAL: This report is made from observation and interview

---

[1]Although it is generally improper to consider matters outside of the pleadings on a motion to dismiss, that rule does not apply to documents referenced by the pleadings themselves that are central to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). In such cases, "'the defendant may submit an authentic copy [of the referenced document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Id*. (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). The report prepared by US-Reports is not attached to Plaintiffs' Complaint (as the Producer Agreement is), however, Plaintiffs repeatedly reference the report in the Complaint as the document upon which B&W based its valuation of the Property. *See, e.g.,* ECF No. 1, ¶¶ 19, 20, 21, 51, 66, 72, 73, 80, 98, 106, and 108.

8

with insured or their representative(s) unless additional sources are shown. US Reports, Inc. is not an insurer and does not guarantee the answers to questions and/or narrative remarks contained in this report. This report concerns such conditions and practices as were observed and considered at the time of call; It is not intended to indicate that there are no other exposures. This report contains information for underwriting purposes only regarding the type of insurance/exposures identified in the headings or title of this form or report, and is to be used for no other purpose. We do not assume legal liability due to misinformation given the field representative, or inaccuracies, human error nor do we assume liability for delayed reports for any cause. The requesting company and its reinsures agree to foregoing conditions and further agree to hold US Reports, Inc. and it representatives free and harmless from any claims or liabilities, including legal fees. This report must be held in confidence.

Plaintiffs assert that they may set forth a claim against US-Reports for negligence because "Michigan law does not require that 'plaintiff have a link such as privity, a bond approaching privity, or a fiduciary relationship with the defendant in order for a duty of reasonable care to exist.'" *Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638 (6th Cir. 2013) (quoting *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 916 (6th Cir. 1991) (citing *Williams v. Polgar*, 215 N.W.2d 149 (1974)). Plaintiffs contend that "Michigan courts have imposed 'an independent duty of care' to be exercised by providers of professional services, like insurance brokers, towards third parties where the harm was foreseeable and where the defendant had specific knowledge that its actions might harm a specific third party." *Id*. at 639 (citing *Williams*, 215 N.W.2d at 156-57 (title abstractor); *Mieras v.*

9

*DeBona*, 550 N.W.2d 202 (1996) (attorney); *Nat'l Sand, Inc. v. Nagel Const., Inc.*, 451 N.W.2d 618, 620 (1990) (engineers liable to contractor as foreseeable injured party for negligent preparation of construction plans). Plaintiffs argue that US-Reports owed a duty to Plaintiffs because it was clearly foreseeable that the information US-Reports provided for underwriting was being collected for the benefit of Plaintiffs. Plaintiffs, in essence, assert that they were intended third-party beneficiaries of the relationship between B&W and US-Reports because US-Reports knew that insureds would rely on the report. In its role of determining whether a duty exists, the Court concludes otherwise.

The Court finds that US-Reports owed no duty to Plaintiffs,[2] as it was not reasonably foreseeable that the information US-Reports provided for underwriting was being collected for the benefit of Plaintiffs – or anyone other than B&W. It is undisputed that US-Reports had no contractual or other relationship with any of the Plaintiffs. The report prepared by US-Reports for B&W unambiguously states: (a) its limited purpose ("This report contains information for underwriting purposes only regarding the type of insurance/exposures identified in the headings or title of this

---

[2]Plaintiffs also contend that US-Reports argues solely with respect to Plaintiffs – not Assured – Plaintiffs' Count VIII cause of action as the assignee of Assured stands without objection. The Court finds no merit in this argument. In the Motion, each of US-Reports' arguments is made with respect to the "Plaintiffs" (Doug Clausen and Joanie Clausen) – which includes Plaintiffs as Trustees of the Clausen Trust and as Assignees of Assured. *See* ECF No. 7, PgID 13.

form or report, and is to be used for no other purpose."); (b) scope ("This report concerns such conditions and practices as were observed and considered at the time of call; It is not intended to indicate that there are no other exposures"); and (c) trustworthiness ("US Reports, Inc. is not an insurer and does not guarantee the answers to questions and/or narrative remarks contained in this report.").

The report expressly disclaimed any liability of US-Reports to anyone for its contents ("We do not assume legal liability due to misinformation given the field representative, or inaccuracies, human error nor do we assume liability for delayed reports for any cause."). The report not only included all of the foregoing terms, it also expressly stated that "The requesting company [B&W] and its reinsures agree to foregoing conditions and further agree to hold US Reports, Inc. and it representatives free and harmless from any claims or liabilities, including legal fees." Finally, the report clearly indicates that the contents of the report are solely for the benefit of B&W – and are not to be shared with any other person or party ("This report must be held in confidence."). The fact that the report explicitly provided that it was for the benefit of B&W and to be held in confidence by B&W only buttresses the Court's finding that, as a matter of law, US-Reports owed no duty to Plaintiffs.

As US-Reports owed no duty to Plaintiffs, Plaintiffs could not have reasonably or justifiably relied on the contents of the report. The presence of the language in the

report cited above – and the lack of any direct relationship between Plaintiffs and US-Reports – establishes that Plaintiffs had no reasonable basis for relying on the report as a matter of law. And, in fact, Plaintiffs' allegations expressly state and implicitly indicate that Plaintiffs were not aware of the report (and US-Reports) until 2018. *See, e.g.,* ECF No. 1, ¶¶ 15, 18, 21, 22, 23. Plaintiffs also do not indicate in their response brief that they were aware of US-Reports or the report prior to 2018, or that they relied on the report when obtaining insurance on the Property. For those reasons, Plaintiffs could not have relied on the report when insuring the Property, and it was not foreseeable that Plaintiffs would disregard the cautionary language in the report.

For the reasons set forth above, the Court holds that Plaintiff have failed to state a claim of negligence or negligent misrepresentation against U-S Reports and grants US-Reports' Motion to Dismiss Counts IV and VIII of Plaintiff's complaint.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that US-Reports' Motion to Dismiss [ECF No. 7] is GRANTED.

IT IS FURTHER ORDERED that the two counts Plaintiffs alleged against US-Reports (Counts IV and VIII) are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that US-Reports is DISMISSED from this cause

of action.

    IT IS ORDERED.

                                                            s/Denise Page Hood  
                                                            DENISE PAGE HOOD  
Dated: May 23, 2023                          UNITED STATES DISTRICT JUDGE