## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DOUG CLAUSEN AND JOANIE
CLAUSEN AS TRUSTEES ON BEHALF
 OF THE CLAUSEN TRUST, JOANIE S.
CLAUSEN REVOCABLE TRUST U/A
DATED APRIL 29, 2003, and as ASSIGNEE
OF ASSUREDPARTNERS OF FLORIDA,
LLC d/b/a DAWSON OF FLORIDA,                    Case No. 20-11193
                                               Hon. Denise Page Hood

        Plaintiffs,

v.

BURNS AND WILCOX, LTD and
US-REPORTS, INC d/b/a AFFIRM SOLUTIONS,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT BURNS AND WILCOX, LTD's
## MOTION TO DISMISS [#14]

## I.    INTRODUCTION

On August 22, 2019, Plaintiffs filed in the Middle District of Florida an eight (8) count Complaint against Burns and Wilcox ("B&W") and US-Reports, Inc. ("US-Reports") (collectively "Defendants"). The lawsuit stems from Defendants' alleged negligence in valuing and insuring Plaintiffs' residential property located in the State of Florida. The case was transferred to the Eastern District of Michigan on May 13, 2020. On July 2, 2020, B&W filed a Motion to Dismiss the counts Plaintiffs

have alleged against B&W (Counts I-III and V-VII). [ECF No. 14] The Motion to Dismiss has been fully briefed.  For the reasons that follow, the Court grants in part and denies in part B&W's Motion to Dismiss.

## II.    BACKGROUND

Plaintiffs' cause of action consists of a series of direct claims and assigned claims discovered during a lawsuit between Plaintiffs Doug Clausen and Joanie Clausen, as Trustees on Behalf of The Clausen Trust, Joanie S. Clausen Revocable Trust U/A Dated April 29, 2003 ("Plaintiffs"), and Assured Partners of Florida, LLC d/b/a Dawson Of Florida ("Assured"). B&W served as the broker on behalf of Assured and the Clausen Trust for an insurance policy ("Policy") issued by Lexington Insurance Company to the Clausen Trust to insure the property located at 10279 Gulf Shore Drive, Naples, Florida 34108 ("Property"). ECF No. 1, ¶ 12.  The Policy provided certain property insurance for the Property for the period of April 15, 2014 to April 15, 2015, with limits of $2,926,645.00 for the dwelling, $1,400,000.00 for contents, and $0.00 for use.

Assured relied on B&W to advise Assured and the Clausen Trust as to the appropriate amount of insurance coverage for the Property and the contents/personal property contained therein. The Clausens' broker, Assured, depended on B&W's experience and expertise to advise them as to the appropriate amount of insurance

coverage in the event of a loss. A contract drafted by B&W, called the "Producer Agreement," defined the relationship between Assured and B&W.  The Producer Agreement was dated February 13, 2014, and it provided for B&W's indemnification of Assured for any claims, suits, losses, expenses, or damages resulting from negligence of B&W. ECF No. 1, Ex. B at § 10 (B&W will "indemnify and hold [Assured] harmless from and against any and all claims, suits, actions, judgments, loss or expense [Assured] may incur or become obligated to pay as a result of any act, omission or negligence of Burns and Wilcox in its processing or handling of insurance business… under this Agreement.").  The Producer Agreement states that it "shall be subject to and governed by the laws of the State of Michigan. *Id.* at § 13.  The Producer Agreement contained a forum selection clause that limits venue for any lawsuit pursuant to the Producer Agreement to "Oakland County, Michigan Crcuit Court or United States District Court for the Eastern District of Michigan, Southern Division." *Id.*

B&W hired US-Reports to conduct an inspection of the Clausen Trust Property. ECF No. 1, ¶ 19. US-Reports allegedly failed to adequately inspect and value the Property during the preparation of its report for B&W. *Id*. at ¶ 20. Based on the inspection received from US-Reports, and without conducting its own investigation, B&W issued a recommendation to Assured to reduce the amount of insurance

coverage provided to the Clausen Trust for the Property.  That recommendation was made even though B&W knew the Property was undergoing a multi-million dollar renovation and had over $3,000,000 in improvements above its original value. *Id*. at ¶¶ 19, 23.

In March 2014, the Clausen Trust contracted with a roofing company to design and construct a waterproof roofing system for the second and third floors of the Property.  In April 2014, the roofing company negligently and carelessly left a section of the roof of the Property open and when a rainstorm occurred, a significant amount rain entered and permeated the interior of the Property's south side, which then caused mold to develop throughout the Property.  There was extensive damage to the Property itself as well as the contents owned therein.

On or about May 6, 2014, the roofing company negligently caused a large section of the Property's roof to catch fire through the improper use/application of a torch-applied self-adhesive material to repair extensive roof damage in and around the area of one of the Property's chimneys. The fire damaged a large portion of the Property and its roof and resulted in significant structural damage, as well as extensive petroleum smoke and soot damage and additional water damage from extinguishing the fire, to both the Property and its contents.  Nearly the entire structure comprising the Property had to be "gutted" and restored in order to remediate the smoke, soot,

water, and mold damage, and almost all of the contents of the Property also had to be replaced.  As a result of those events, the cost of repairs and remedying other losses exceeded $8,000,000.00.

Plaintiffs sued Assured for underinsuring the Property. *Id*. at ¶ 38. Plaintiffs alleged that the Property was significantly underinsured, resulting in a coverage gap of several million dollars between the amount insured and the amount of money required to restore the Property to its pre-fire condition, a project that was not completed until 2017. *Id*. at ¶ 30.  During the underlying action against Assured, Plaintiff came to believe that, but for the acts and omissions of B&W and US-Reports in valuing and recommending placement of insurance to Assured and the Clausen Trust, the Clausen Trust would have avoided millions of dollars in uninsured losses. *Id*. at ¶ 31.

Plaintiffs' lawsuit against Assured resulted in a confidential settlement. As part of the settlement, Assured assigned to Plaintiffs all rights of Assured, including indemnification, defense, subrogation, and contribution arising from the negligence of B&W and US-Reports in the preparation of estimates concerning the value of the Property. *Id*. at Ex. A.  In the instant action, Plaintiffs assert both direct and assigned claims against B&W and US-Reports.  Plaintiffs' complaint alleges six counts against B&W: (1) Count I - Breach of Contractual Indemnity; (2) Count II - Common Law

Indemnity; (3) Count III - Negligence; (4) Count V - Breach of Contract; (5) Count VI - Breach of Fiduciary Duty; and (6) Count VII - Negligent Misrepresentation. Plaintiff's complaint alleges two counts against US-Reports: (a) Count IV - Negligence; and (b) Count VIII - Negligent Misrepresentation.

Shortly after this case was filed in the Middle District of Florida, B&W filed a motion to dismiss the claims against it, which included a request for transfer of the case to the Eastern District of Michigan.  US-Reports filed a separate motion to dismiss. On May 12, 2020, the court in the Middle District of Florida granted B&W's request for transfer based on the forum selection clause, denied without prejudice the remainder of B&W's motion without prejudice, and denied without prejudice US-Reports' motion to dismiss.  Specifically, the Middle District of Florida determined that the forum selection clause dictated the transfer of Counts I, II, V, VI, and VII (against B&W) to this Court.  That court also concluded that Counts III (against B&W) and IV and VIII (both against US-Reports) should be transferred to this Court as well, rather than be severed.  Following transfer of Plaintiffs' cause of action to this Court, B&W filed its Motion to Dismiss Counts I-III and V-VII, arguing that all six counts should be dismissed for failure to state a claim and that Counts III and VI also are barred by the applicable statute of limitations.

## III.   APPLICABLE LAW & ANALYSIS

## A.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.    Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff.  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful.  *Id.* at 556.  Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.    Analysis

### 1.    Applicable Law

B&W argues that all of Plaintiffs' claims against B&W are governed by Michigan law, citing the forum selection clause and language in the Producer Agreement that it is governed by the laws of the State of Michigan.  Plaintiffs concede

that Michigan law governs Counts I, II, V, VI, and VII because those counts stem from the Producer Agreement.  Plaintiffs argue that, as indicated in the Middle District of Florida's order, Count III is independent of the Producer Agreement and is a direct claim against B&W.  Plaintiffs therefore assert that Count III is unencumbered by the forum selection clause and governed by Florida law.

At issue is the appropriate interpretation of *Atlantic Marine Constr. Co. Inc. v. U.S. Dist. Court for the W.D. of Texas*, 571 U.S. 49, 65 (2013). Plaintiffs direct the Court to the following statement by the *Atlantic Marine* court: "the state law applicable in the original court also appl[ies] in the transferee court." *Id*. (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). This "prevent[s] 'defendants, properly subjected to suit in the transferor State,' from 'invok[ing] § 1404(a) to gain the benefits of the law of another jurisdiction." *Id.* (quoting *Van Dusen*, 376 U.S. at 638). Plaintiffs ignore the critical relevant part of *Atlantic Marine*, however, as the court held:

> Third, when a party bound by a forum-selection clause flouts its contractual obligation **and files suit** in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . .

*Atlantic Marine*, 571 U.S. at 64 (emphasis added).

The *Atlantic Marine* court did not limit its holding regarding the choice of law

only to claims governed by a forum selection clause, however, and the Sixth Circuit (among other courts) has held that non-parties (such as Plaintiffs) can be bound by forum selection clauses contained in contracts. *See, e.g., Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir.1997); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 207–11 (7th Cir.1993); *Veterans Payment Sys., LLC v. Gossage*, 2015 WL 545764, *7 (N.D. Ohio, Feb. 10, 2015) ("a nonsignatory" to a forum selection clause may be bound if the non-signatory is "closely related" to the contracting parties or dispute, such that it was "'foreseeable' that it will be bound[.]").

The Court finds that *Atlantic Marine* provides that if a plaintiff ignores a relevant forum selection clause when filing its cause of action, and as a result, plaintiff's cause of action is transferred pursuant to Section 1404(a), the governing law will be that of the jurisdiction where the forum selection clause dictates. The Court also finds that Plaintiffs' direct claim against B&W in Count III would not exist but for the relationship between Assured and B&W. And, the relationship between Assured and B&W is subject to the forum selection clause, as evidenced by the assignee claim Plaintiffs brought in Count VII. For these reasons, the Court concludes that Plaintiffs claim in Count III is governed by Michigan law.

2. *Count III - Direct Claim of Negligence*

Under Michigan law, the statute of limitations for a negligence claim is three

years from the time the claim accrues, which is at the time the wrong occurred, regardless of the time when damage results. *See* M.C.L. § 600.5805; M.C.L. § 600.5827.  B&W argues that the date of injury in this case is May 6, 2014, the date of the fire.  B&W argues that Plaintiffs should have known that B&W was listed as the independent surplus lines broker in 2014.  Plaintiffs did not file this cause of action until August 22, 2019, more than five years later.

Plaintiffs argue that, although they labeled Count III as negligence (and Count VII as negligent misrepresentation), the allegations in those counts are that B&W made misrepresentations regarding the appraisal of the property, resulting in undervaluing the Property.  The Court will address the negligent misrepresentation claim below, but a review of the allegations in Count III reveals no allegations of misrepresentation.  In Count III, Plaintiffs simply allege that B&W "negligently and severely undervalu[ed] the Property[,] ignoring the increased value of the dwelling by failing to account for improvements made to the Property resulting in under-insurance of the Property." ECF No. 1, PgID 12 (at ¶65).  The Court finds that the alleged negligent action by B&W (and the injury to the Property) occurred in 2014, and it is undisputed that Plaintiffs did not file this action against B&W until more than five years later.  Accordingly, the Court holds that Plaintiffs' negligence claim against B&W is barred by the three-year statute of limitations in M.C.L. § 600.5805.  The

Court grants B&W's motion to dismiss with respect to Count III.

       3.     *Count I - Contractual Indemnity; Count V - Breach of Contract*

B&W argues that Plaintiffs' contractual indemnification claim in Count I and breach of contract claim in Count V fail to allege any facts that would establish that B&W is responsible for any act, omission, or negligence in processing or handling insurance under the Producer Agreement. To state a claim for breach of contract under Michigan law, a plaintiff must allege: (1) the existence of a contract between the parties; (2) that the terms of the contract require performance of certain actions; (3) that the defendant breached specific terms of that contract; and (4) the breach caused plaintiff injury. *See, e.g., Webster v Edward D. Jones & Co., L.P.*, 197 F.3d 815 (6th Cir. 1999); *Thill v. Ocwen Loan Serv., LLC*, 8 F.Supp.3d 950 (E.D. Mich. 2014).

B&W states that the Producer Agreement was between B&W and Assured, not between Plaintiffs and B&W, so B&W believes that it owed no duty to Plaintiffs. The Court is not persuaded by B&W's argument. All of Plaintiffs' claims against B&W (except for the negligence claim discussed above) were filed by Plaintiffs as the assignee of Assured. As set forth in Section 1 of the Producer Agreement, the provisions of that agreement are "binding upon the parties and their respective heirs, successors and assigns." As such, the Court must assess whether those claims –

11

including the contractual indemnification and breach of contract claims – would be viable if brought by Assured.

B&W contends that Plaintiffs' claims arising out of the Producer Agreement fail to state a cause of action because they do not set forth actions "showing that B&W is responsible for any act, omission, or negligence in processing or handling insurance under this Agreement." B&W asserts that Plaintiffs do "not identify one single contract provision that it contends B&W breached, much less one where B&W assumed the obligation to value property or make recommendations for Assured Partner's client's insurance needs." The Court disagrees.

Plaintiffs identify the contract provision at issue – "Indemnity Agreement" – in multiple paragraphs of the complaint, including in Counts I and V. ECF No. 1, at ¶¶ 17, 32, 35, 77, 81. That provision sets forth B&W's duty to indemnify Assured as well as B&W's obligations to Assured that may implicate that duty. The indemnification provision states:

> B&W shall indemnify and hold the Producer [Assured] harmless from and against any and all claims, suits, actions, judgements, loss or expense the Producer [Assured] may incur or become obligated to pay as a result of any act, omission or negligence of B&W in its processing or handling of insurance business placed by the Producer [Assured] through B&W under this Agreement . . . .

ECF N. 1, Ex. B at § 10.

Plaintiffs maintain they have alleged that B&W assumed the duty to process

and handle the insurance business placed by Assured in such a manner as to protect Assured from incurring or having an obligation to pay as a result of any act, omission or negligence of B&W as a result of such processing and handling. Although B&W asserts that the Producer Agreement "did not [impose upon B&W] a duty to value the Property or to recommend coverage," as Plaintiffs claim, that assertion amounts only to one possible interpretation of the undefined terms "processing" and "handling."

Without specific definitions of the relevant terms, the Court must look to the plain sense and meaning of the language. *City of Grosse Pointe Park v. Michigan Liability and Property Pool*, 702 N.W.2d 106, 113 (Mich. 2005) (citations omitted). The definition of "handling" includes "a process by which something is handled in a commercial transaction," (https://www.merriam-webster.com/dictionary/handling), and "process[ing]" includes "to subject to or handle through an established usually routine set of procedures" (https://www.merriam-webster.com/dictionary/processing).

B&W's motion asserts that: "The inspection [appraisal] was performed pursuant to Lexington Insurance Company's underwriting guidelines. That is, pursuant to underwriting protocol by the insurer, inspections of the property are performed to determine value and policy limits. Burns & Wilcox requested that U.S. Reports perform that service." Based on this representation, Plaintiffs contend that established procedures executed by B&W involve appraisals to determine valuation and policy

13

limits – precisely conforming with the plain meaning of "handling" and "processing." And, if the terms are ambiguous, the ambiguity should be construed against the drafter. *Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 423 (6th Cir. 2008). In this case, the Producer Agreement clearly originated with B&W, so any ambiguity in the contract terms must be construed against B&W, and Plaintiffs assert that "processing" and "handling" should be deemed to include B&W's valuation of the property and the offer of insurance based on same.

The Court also finds that Plaintiffs have alleged that B&W's breach of the Producer Agreement caused Assured damages. Plaintiffs brought a lawsuit against Assured in the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 2016-CA-656 (the "Lawsuit"). ECF No. 1 at ¶ 38. As a consequence of the lawsuit, Assured was harmed as a result of the negligent acts and omissions of B&W, who was responsible for incorrectly valuing the subject Property leading to a reduction in the insurance for the Property. *Id.* at ¶ 39. Pursuant to the terms of the "Producer Agreement," B&W is contractually obligated to indemnify and defend Assured for those losses, including attorneys' fees and costs. *Id.* at ¶ 40. Prior to the commencement of the instant lawsuit, the Clausen Trust sought remuneration for indemnification and defense from B&W, but was rejected. *Id.* at ¶ 47.

For the reasons set forth above, the Court finds that Plaintiffs have sufficiently

pleaded their breach of contract and contractual indemnity claims.  B&W's motion to dismiss is denied with respect to Counts I and V.

4.    *Count II - Common Law Indemnification*

B&W contend that Plaintiffs' common law indemnification claim should be dismissed.  B&W argues that there was no relationship between Plaintiffs and B&W that impliedly assured indemnification, nor were Plaintiffs third-party beneficiaries of the Producer Agreement.  B&W states that it had no direct relationship with Plaintiffs (the Clausen Trust) and that Assured is the Clausen Trust's retail insurance agent.  Plaintiffs state that it was Assured who contacted B&W to obtain quotes, as is common when a retail agent reaches out to a wholesale surplus lines broker to access the surplus lines market.

The Court notes that the common law indemnification claim is pleaded in the alternative to Count I but largely contains the same allegations.  For the reasons set forth above, namely that Plaintiffs are suing B&W as assignees of Assured, the Court finds that Plaintiffs have satisfied their burden of pleading a claim upon which relief may be granted, such that their common law indemnification is sufficient to survive B&W's Rule 12(b)(6) motion.

5.    *Count VI - Breach of Fiduciary Duty*

B&W argues that there was no fiduciary relationship between B&W (an

independent insurance broker) and Assured (a retail insurance agency). The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages. *Stephens v. Dixon*, 536 N.W.2d 755, 758 (Mich. 1995). Under Michigan law, fiduciary duties arise "'out of the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.'" *Wysong Corp. v. M.I. Indus.*, 412 F.Supp.2d 612, 632 (E.D. Mich. 2005) (quoting *Portage Aluminum Co. v. Kentwood Nat'l Bank*, 307 N.W.2d 761, 763 (Mich. Ct. App. 1981)); *see also Smith v. Saginaw Sav. & Loan Ass'n*, 288 N.W.2d 613, 618 (Mich. Ct. App. 1979) ("A fiduciary relationship exists when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another."). To prevail on a breach of a fiduciary duty claim, a plaintiff must show that the "'position of influence has been acquired and abused," or the "confidence has been reposed and betrayed." *Vicencio v. Ramirez*, 536 N.W.2d 280, 284 (Mich. Ct. App. 1995)).

The Court finds that Plaintiffs have alleged a viable breach of fiduciary duty claim. Specifically, Plaintiffs have alleged that:

> (a) "Assured and Burns and Wilcox had a longstanding contractual relationship, wherein, Assured routinely relied on the advice and recommendations of Burns and Wilcox" (ECF No. 1, at ¶88);

(b) "Assured had a repose of trust and confidence in Burns and Wilcox, and Burns and Wilcox accepted that confidence and trust with knowledge that Assured would rely on its recommendations for the appropriate coverage amount given its superior knowledge and position concerning the placement of insurance" (ECF No. 1, at ¶89);

(c) B&W "breached its fiduciary duty to Assured when it failed to exercise reasonable care in advising Assured concerning the value of the Property through inadequate due diligence and negligent errors and omissions. Burns and Wilcox took shortcuts and failed to adequately evaluate the Property before making a recommendation to Assured. Burns and Wilcox acted in its own best interest by making uninformed recommendations to obtain expedient commissions" (ECF No. 1, at ¶92); and

(d) B&W's "breach resulted in the under-valuing and under-insuring of the Property." (ECF No. 1, at ¶93).

Based on the foregoing allegations that the Court must treat as true for purposes of a Rule 12(b)(6) motion, a relationship between Assured and B&W existed where "there [wa]s a reposing of faith, confidence and trust and the placing of reliance by one [Assured] upon the judgment and advice of another [B&W]." *Smith*, 288 N.W.2d at 618; *Wysong Corp.*, 412 F.Supp.2d at 632. The Court denies B&W's motion to dismiss Plaintiffs' breach of fiduciary duty claim in Count VI.

6. *Count VII - Negligent Misrepresentation*

With respect to Plaintiffs' negligent misrepresentation claim at Count VII, the Court first must determine whether, as B&W asserts, the claim is barred by the three-year statute of limitations period for negligence claims.

17

Plaintiffs contend – and B&W did not file a reply that refuted – that a six-year statute of limitation applies to Plaintiffs' negligent misrepresentation claim. *See, e.g., Sun Yu v. Migliazzo*, No. 338847, 2018 WL 3244140, at *2 (Mich. Ct. App. July 3, 2018) (citing *Coats v. Uhlmann*, 274 N.W.2d 792 (Mich. Ct. App. 1978) (applying six-year statute to negligent misrepresentation in a real estate transaction); and *Sweet v. Shreve*, 247 N.W. 711 (Mich. 1933) (damages caused by a real estate dealer's misrepresentations to a buyer as to the value of land were not injuries to persons or property within the meaning of the three-year statute of limitations)).[1]

The Court finds that Plaintiffs are seeking damages relating to the undervaluing of the Property because the applicable insurance policy did not reflect an accurate assessment of the appropriate coverage.  Based on Michigan case law, the Court concludes that M.C.L. § 600.5813 applies to Plaintiffs' negligent misrepresentation claim, *Sun Yu; Coats; Sweet, supra*, such that a six-year statute of limitations applies, and does not operate to, bar that claim.

For a negligent misrepresentation claim, a plaintiff is required "to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Unibar Maintenance Servs.,*

---

[1]Plaintiffs also argue that their negligence claim is timely under Florida law, particularly pursuant to the delayed discovery ("blameless ignorance") doctrine.  Under that doctrine, Plaintiffs contend that they did not find out about B&W until 2018, so the statute of limitations only began to run at that time.

*Inc. v. Saigh*, 283 Mich. App. 609, 621 (2009). "Duty may be defined as an obligation, to which the law will give recognition and effect [t]o conform to a particular standard of conduct toward another." *Jackson*, 204 Mich.App. at 125. Questions of duty are generally questions of law for the court to decide. *Id*.; *Harts v. Farmers Ins. Exch.*, 461 Mich. 1 (1999).

The Court finds that Plaintiffs have met their burden. Count VII is an assignee claim for negligent misrepresentation, such that it is, in effect, a claim by Assured against B&W. The Complaint alleges that: (1) B&W represented to Assured that the subject property had decreased in value warranting a decrease in the amount of insurance coverage (*id*. ¶ 97); (2) B&W incorrectly inputted information into its computer system concerning the value of the property (*id*. ¶ 99); (3) B&W negligently provided the false valuation to Assured (*id*. ¶ 100); (4) Assured relied on B&W's misrepresentations (*id*. ¶ 101); and (5) Assured suffered damages as a result of the policy (*id*. ¶¶ 102, 103).

As discussed above, the Producer Agreement provides that B&W owed Assured a duty to conduct its processing or handling of the insurance business placed by Assured accurately and competently. B&W's alleged misrepresentations as to valuation and undervaluation of the property provide an additional basis to establish a relationship such that B&W owed a duty to Assured. For these reasons, the Court

finds that the alleged misrepresentations have been identified in a sufficient manner. B&W's motion to dismiss is denied with respect to the negligent misrepresentation claim in Count VII.

## IV.    CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that B&W's Motion to Dismiss [ECF No. 14] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Count III of Plaintiffs' Complaint is DISMISSED, but Counts I, II, V, VI, and VII remain.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 23, 2023                    UNITED STATES DISTRICT JUDGE